# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ANTONIO R. MARTINEZ,

        Petitioner,

v.                                         Case No. 10-C-220

MICHAEL THURMER,

        Respondent.

## DECISION AND ORDER DENYING WRIT OF HABEAS CORPUS

On March 11, 2010, Antonio R. Martinez filed this petition pursuant to 28 U.S.C. § 2254, asserting that his state court conviction and sentence were imposed in violation of the Constitution. Petitioner was convicted in Racine County Circuit Court of two counts of attempted first-degree intentional homicide, possession of a firearm by a felon, resisting an officer, and operating a firearm while intoxicated. He was sentenced to 35 years imprisonment and 20 years of extended supervision. Martinez has exhausted his appeals at the state level. The Wisconsin Court of Appeals affirmed the judgment of conviction. (Dkt. 6, Ex. E, ¶1.) Martinez subsequently petitioned the Wisconsin Supreme Court for review. (Dkt. 6, Ex. F.) The court denied his petition on March 17, 2009. (Dkt. 6, Ex. H.) In his present habeas petition Martinez argues that the trial court's admission of a photo array and jury instructions violated his constitutional rights. Because the state court decisions adjudicating these claims reasonably applied clearly established federal law and reasonably determined the facts in light of the evidence, the petition will be denied.

**BACKGROUND**

The allegations that gave rise to the charges against Martinez stem from a bar disturbance in Racine, Wisconsin that ended with two men being shot. The bar's owner, Richard Smetana, and a bar employee, Nicholas Seeger both suffered non-fatal gunshot wounds just outside the bar after escorting a disruptive patron out. Both victims, as well as a number of other eyewitnesses, identified Martinez as the shooter—both during a police photo array and at trial. At the time of the shooting Martinez wore his hair in a ponytail and had two distinctive tattoos on his neck—a depiction of two hands praying on one side of his neck, and his name on the other side. The shooter fled the scene immediately after the shooting, but within minutes police apprehended Martinez hiding in a nearby wooded area.

Police used two photo arrays during their investigation of the shooting. In the first photo array, shown to five potential witnesses, only one subject had a visible tattoo on his neck. (Dkt. 6, Ex I, 17, 21, 28, 31, 34.) In the second photo array, shown to the two victims, Martinez and two photos of fillers subject had visible tattoos on their necks. (Dkt. 6, Ex. I, 39, 43.) Prior to trial Martinez moved to suppress the photographic identifications but the trial judge denied his motion.

The Wisconsin Court of Appeals summarized the testimony of some of the eye witnesses from the night in question as follows:

> At trial, the two victims of the attempted homicides testified that Martinez had shot them. Another witness testified that he knew Martinez before the night of the incident and was able to identify him as the person who shot the two victims. Other witnesses also identified Martinez.

(Dkt. 6, Ex. E, ¶ 3.) At the conclusion of the evidence the trial court read the following jury instruction:

2

> If you're satisfied beyond a reasonable doubt that the defendant intended to kill Richard Smetana and/or Nicholas Seeger, and the defendant's acts demonstrated unequivocally that the defendant intended to kill and would have killed Richard Smetana, and/or Nicholas Seeger except for the intervention of another person or some other extraneous factor, you should find the defendant guilty of attempted first degree homicide.

(Dkt. 6, Ex. E, ¶5.) The trial court added:

> To explain to you here again, Counts 1 and 2 are the same crime charged but with respective different victims. So I've read the instruction once but the same language I just read applies to both Counts 1 and 2. The difference is that Count 1 has the name of victim Richard Smetana and Count 2 has the name of victim Nicholas Seeger.

(*Id.*) The jury deliberated and convicted Martinez on all counts.

After unsuccessfully appealing his conviction to the Wisconsin Court of Appeals and then to the Wisconsin Supreme Court, Martinez filed the present habeas petition. He contends that he is entitled to federal habeas relief on two grounds: (1) the jury instructions regarding the attempted homicide charges violated his constitutional right to a unanimous jury verdict; and (2) photo arrays and subsequent out-of-court photographic identifications of him were impermissibly suggestive.

## ANALYSIS

**I. Habeas Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs review of Stephens's petition. Under that statute, a federal court may not grant habeas relief unless the State court's adjudication of the claim resulted in a decision that was (1) "contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court

3

of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence produced in the State court proceeding." 28 U.S.C. § 2254(d).

> [A] state court decision involves an unreasonable application of clearly established law if the state court identifies the correct rule and unreasonably applies it to the facts, or if the state court unreasonably extends, or refuses to extend, a rule of law. In determining whether Supreme Court precedent has been applied unreasonably, we do not ask simply whether the state court's application was erroneous, or even clearly erroneous, but whether the decision was "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003).

*Williams v. Bartow*, 481 F.3d 492, 498 (7th Cir. 2007). Moreover, factual determinations by a State court carry a "presumption of correctness" which requires "clear and convincing evidence" to overcome. 28 U.S.C. § 2254(e)(1).

In evaluating an application for habeas corpus pursuant to the judgment of a state court, facts determined by the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The applicant is burdened with rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(d).

When determining whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law, lower federal courts must look exclusively to Supreme Court precedent in reviewing habeas petitioners' claims. *Sweeney v. Parke*, 113 F.3d 716, 718 (7th Cir. 1997). Petitioners "must show that the Supreme Court has 'clearly established' the propositions essential to their position." *Mueller v. Sullivan*, 141 F.3d 1232, 1234 (7th Cir. 1998). A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

4

The state court decision involves an unreasonable application of such law if "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

## II. Jury Instructions

Martinez's first habeas claim is that the jury instructions regarding the attempted homicide charges violated his constitutional right to a unanimous jury verdict. Specifically, Martinez complains that the circuit court erroneously instructed the jury that he could be found guilty of any count of attempted homicide if he attempted to kill either victim, Richard Smetana or Nicholas Seeger.

Martinez made this same argument before the Wisconsin Court of Appeals. That court disagreed, reasoning:

> First, Martinez acknowledges that his trial counsel did not object to the jury instruction. "We have the discretionary power to review a waived instructional error if the error goes to the 'integrity of the fact-finding process.'" *State v. Hatch,* 144 Wis. 2d 810, 824, 425 N.W.2d 27 (Ct. App 1988) (citation omitted). As we did in *Hatch*, we will address the claimed error in this case.
>
> When [determining] whether an instruction was confusing, we may consider whether the "overall meaning" was communicated to the jury. *Id.* at 826. *Hatch* also involved two charges of attempted first-degree homicide. *Id.* at 824. The circuit court gave an instruction that was remarkably similar to the one given here. Before giving the instruction, the court explained to the jury that for one count it was necessary that the jury find the defendant intended to kill the first victim, and as to the second count it was necessary that the jury find that the defendant intended to kill the second victim. *Id.* at 826. We concluded that the "the instructions, taken in their entirety, render any error harmless because the overall meaning communicated by the instructions was a correct statement of the law." *Id.*

5

> Similarly, we agree with the circuit court that the instruction in this case was not confusing. Further, even if the instruction itself was confusing, the explanation given by the court immediately following the reading of the instruction communicated to the jury a correct statement of the law. We reject Martinez's argument that he was denied his right to a unanimous jury verdict.

(Dkt. 6, Ex. E, ¶¶5-9).

As stated above, in order to grant Martinez's habeas petition this Court must find that the Wisconsin Court of Appeals decision was contrary to, or an unreasonable application of, clearly established federal law. This Court cannot so find. Martinez argues that "the trial court should have instructed the jury that they need to be unanimous as to the conduct as to each victim." (Petitioner's Br. at 6.) But Martinez had no *federal* constitutional right to a unanimous jury verdict in his state court non-capital trial. *McDonald v. City of Chicago,* 130 S. Ct. 3020, 3035 n. 14 (2010) (citing cases). Even if the jury instruction indicated that a non-unanimous verdict was acceptable, it would still not violate a federal right. Such a jury instruction, therefore, would not lead to the requisite unreasonable application of clearly established *federal* law for habeas relief.

Martinez also argues that the jury instruction was so unclear that it improperly relieved the State of its burden of proving guilt beyond a reasonable doubt. Essentially his position is that the instruction inferred that if they jury believed Martinez had attempted to kill Richard Smetana, they could convict Martinez of attempting to kill Nicholas Seeger (and vice-versa). In collateral proceedings involving erroneous jury instructions an error will be deemed harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637-638 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Under this standard, it is not enough to show that there is a reasonable probability that the error contributed to the jury's verdict; rather the petitioner must establish that the error resulted in

6

actual prejudice. *Id.* An erroneous jury instruction will rise to the level of a constitutional violation if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire,* 502 U.S. 62, 72 (1991) (citing *Cupp v. Naughten,* 414 U.S. 141 (1973)). In reviewing an ambiguous instruction, it "may not be judged in artificial isolation" but rather must be considered in the context of the record as a whole. The key focus of the inquiry is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the constitution." *Id.* As applied to this case, the question is whether it is "reasonably likely" that the jury relied on the erroneous portion of the instruction in a manner that "had substantial and injurious effect or influence" in determining the verdict.

Even if the jury instruction in Martinez's case was erroneous I cannot conclude that it had such a substantial and injurious effect or influence on the verdict. There are several reasons for this. First, as the Wisconsin Court of Appeals noted, the trial court gave a specific clarifying instruction to the jury specifying that the alleged victim in Count 1 was different from the alleged victim in Count 2. The trial court also instructed jurors that "the State must prove every element of the offense charged in each count beyond a reasonable doubt" (Dkt. 7, Ex. O, 9) so they knew that the State had to prove Martinez attempted to kill Richard Smetana (Count 1) and that Martinez attempted to kill Nicholas Seeger (Count 2). (Dkt. 7, Ex. O, 9.) The trial court also instructed the jury that "Your verdict for the crime charged in one count may not affect your verdict on any other count." (Dkt. 7, Ex. O, 72.) These instructions, taken together, were apparently not too confusing for the jury to follow; the jury unanimously convicted Martinez on both Count 1 and Count 2 of attempted murder. (Dkt. 7, Ex. O, 74-75.) Because Martinez offers no evidence that the jury applied the challenged instruction in a way that violates the constitution I hold that the Wisconsin Court of Appeals' denial

7

of Martinez's appeal was not contrary to, or an unreasonable application of, clearly established federal law.

**III. Photographic Identifications**

Martinez's second ground for habeas relief is his argument that photo arrays and subsequent out-of-court photographic identifications of him were impermissibly suggestive. Specifically, Martinez complains that he was the only person in one of the photo arrays with a tattoo on his neck and his hair in a pony tail—two identifying characteristics noted by a majority of the eyewitnesses. Martinez claims that the identification procedures violated his due process rights under the United States Constitution and seeks to have his convictions reversed.

There is a two-step process for evaluating a constitutional question presented by an out-of-court procedure and an in-court identification. The first question is whether the police used an impermissibly suggestive procedure in obtaining the out-of-court identification. *Neil v. Biggers,* 409 U.S. 188 (1972). If so, the second question is whether, under all the circumstances, that suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. *Manson v. Brathwaite,* 432 U.S. 98, 106-7 (1997).

The Wisconsin Court of Appeals assumed Martinez satisfied the first step—that the photo array was impermissibly suggestive—but held that the there was no substantial likelihood of irreparable misidentification. It reasoned:

> The next issue is whether the circuit court erred when it denied Martinez's motion to suppress evidence. Martinez argues that the photo array shown to witnesses by the police was unduly suggestive. Assuming without deciding that the array was overly suggestive, we nonetheless conclude that the circuit court properly denied the motion. Even if a photo display is impermissibly suggestive, however, the court may consider whether under the totality of the circumstances, the "very substantial likelihood . . .

8

of misidentification" has been avoided. *State v. Mosley,* 102 Wis. 2d 636, 655, 307 N.W.2d 200 (1981) (citation omitted). The court should consider:

> ". . . the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

*Id.*

(Dkt. 6, Ex. E, ¶ ¶ 10-11). Applying that standard to the facts of Martinez's case the Wisconsin Court of Appeals reasoned:

> In this case, the evidence was such that the photo arrays were almost superfluous. Both of the victims identified Martinez. Both of them saw Martinez before and while he shot them. Both of them described Martinez accurately, including that he had a ponytail and a tattoo on his neck. Another witness knew Martinez before the incident and named Martinez as the shooter before he was even shown the photo arrays. The other three witnesses who viewed the arrays also had sufficient opportunity to see Martinez during the crime, and accurately described him. It simply defies reason that all of these people could have gotten the identification wrong. Based on this, we conclude that under he totality of the circumstances, these factors avoided the likelihood of misidentification. Consequently, we conclude that the circuit court did not err when it denied Martinez's motion to suppress. For the reasons stated, we affirm the judgment and order of the circuit court.

(Dkt. 6, Ex. E, ¶ ¶ 12-13). This Court must now determine whether the Wisconsin Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). Martinez argues that the photo identification procedure tainted the witnesses and victims because it was the first identification procedure used. Essentially he argues that the witnesses keyed in on they only photo in the array with a neck tattoo and this clouded the witnesses' subsequent in court identification.

I disagree for several reasons. First, the Wisconsin Court of Appeals applied the correct legal standard. The case it cited, *State v. Mosley,* 102 Wis. 2d 636, 307 N.W.2d 200 (1981), traces its

9

holding to the two controlling United States Supreme Court cases, *Neil v. Biggers,* 409 U.S. 188 (1972), and *Manson v. Brathwaite,* 432 U.S. 98, 106, (1997). Because the Wisconsin Court of Appeals assumed the photo arrays were impermissibly suggestive, it is clear the court applied the two-step process recognized by the United States Supreme Court in *Manson v. Brathwaite. Id.*

Second, there is more than enough evidence on this record showing that the photo identification did not give rise to a substantial likelihood of irreparable misidentification. The Wisconsin Court of Appeals was correct to note that the photo identification procedure was "almost superfluous" because so many witnesses had such an ample opportunity to observe Martinez before and even during the shooting. One of the victims, Richard Smetana, testified that he viewed Martinez for ten minutes prior to the shooting. As the bar's owner, Mr. Smetana's attention was directed toward Martinez who happened to be involved in a disturbance inside the bar. Moreover, Mr. Smetana also testified that, once outside, he watched Martinez lift up his shirt, reach into his waistband, pull out a gun, and shoot him. (Dkt. 6, Ex. K, 58-59, 73-74.) The other victim, Nicholas Seeger, helped escort Martinez to the door and also watched, from ten feet away, as Martinez shot him. (Dkt. 6, Ex. K, 98-99, 111.) In addition to the identification by the two victims, other witnesses observed the shooting. Reuben Bartozuk, testified that he knew Martinez from work, saw him at the bar that evening prior to the shooting, and saw Martinez fire a gun. (Dkt. 6, Ex. K, 121-122, 125.) Four other witnesses saw Martinez at the bar on the night in question. One of the witnesses, Chase Jacobson testified that he saw a man with a gun in his hand, saw the man run away, and shortly thereafter watched police arrest the same man—a man who turned out to be Martinez. (Dkt. 6, Ex. K, 221-22; Dkt. 7, Ex. L. 46; Dkt. 7, Ex. N, 54-57). Add to all of this the fact that Martinez, though he denied the shooting, admitted to being in the bar and to running and hiding.

(Dkt. 7, Ex. N, 51-60). Martinez cites no authority for his position that the decision was improper in light of clearly established federal law. In light of the overwhelming eyewitness testimony, and the opportunity for so many witnesses to observe Martinez before and during the shooting, I cannot find that the decision of the Wisconsin Court of Appeals was contrary to, or involved an unreasonable application of, clearly established Federal law. The Court of Appeals reasoning—that even if the photo arrays were improperly suggestive there was not a substantial likelihood of irreparable misidentification—is supported by the testimony and evidence in this case and is not an unreasonable application of clearly established federal law.

## CERTIFICATE OF APPEALIBILITY

Because the Court is entering a "final order adverse to the applicant," it must address whether it will issue or deny a certificate of appealability. Rule 11 of the Rules Governing § 2254 Cases. The certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). If the court issues a certificate of appealability it must indicate on which specific issue or issues the petitioner has satisfied the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3).

Here, I conclude that the petitioner has failed to make a substantial showing of a denial of a constitutional right as to any of his claims. The record does not support finding that a reasonable jurist would find debatable whether the Wisconsin courts unreasonably determined the facts in light

11

of the evidence presented or unreasonably applied clearly established federal law. Accordingly, the certificate of appealability will be denied.

**THEREFORE, IT IS ORDERED** that the petition is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**. The Clerk is instructed to enter judgment of dismissal in favor of the Respondent.

Dated this ___16th___ day of November, 2010.

                                                  s/ William C. Griesbach
                                                  William C. Griesbach
                                                  United States District Judge